# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| ARON LYNN VANDEWATER, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>FRANK BISIGNANO, )<br>COMMISSIONER OF SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. 2:24-cv-00035<br>Judge Richardson / Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 10. Plaintiff has filed an accompanying Memorandum. Docket No. 10-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14. Plaintiff has filed a Reply. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on January 12, 2021, alleging that she had been disabled since December 1, 2020, due to fibromyalgia, peripheral neuropathy, carpal tunnel syndrome, sleep apnea, irritable bowel syndrome, chronic pain disorder, psoriasis, post-traumatic stress disorder, trigger finger, and L5-S1 pars interarticularis defect. *See, e.g.,* Docket No. 7 ("TR"), p. 118. Plaintiff's application was denied both initially (TR 131) and upon reconsideration (TR 148). Plaintiff subsequently requested (TR 170-171) and received (TR 33-80) a hearing. Plaintiff's hearing was conducted on June 29, 2023, by Administrative Law Judge ("ALJ") Glenn G. Meyers. TR 33. Plaintiff and vocational expert ("VE"), Michelle L. Bishop, appeared and testified. *Id.*

On November 22, 2023, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 17-32. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant has not engaged in substantial gainful activity since December 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: diabetes mellitus; carpel tunnel syndrome, status post release surgery; osteoarthritis of the bilateral wrists; lumbar degenerative disc disease; and depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with additional limitations. Specifically, the claimant requires a sit/stand at will option at work with no walking required at work, can lift/carry ten pounds occasionally and frequently, can perform frequent reaching, handling, and fingering, can perform occasional stooping and crouching, is unable to crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds, and cannot work at heights or in proximity to hazardous conditions. Mentally, the claimant is able to understand, remember, and carry out simple instructions and tasks and use judgment to make simple work-related decisions. She cannot have contact with the public. She is capable of working in proximity to, but not in proximity, to co-workers and can have occasional contact with supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 10, 1981 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2020, through the date of this decision (20 CFR 404.1520(g)).

TR 20, 23, 27-28.

On December 4, 2023, Plaintiff timely filed a request for review of the hearing decision. TR

291-293. On March 25, 2024, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A.     Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v.*

4

*Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

    **B.**    **Proceedings At The Administrative Level**

5

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

**C. Plaintiff's Statement Of Errors**

Plaintiff contends that the ALJ erred in failing to incorporate an accurate portrayal of plaintiff's exertional and nonexertional limitations into his hypothetical question presented to the

7

VE. Docket No. 10-1, p. 4-8. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

Plaintiff argues that the ALJ's hypothetical question posed to VE Michelle L. Bishop did not accurately reflect the full extent of her limitations, and that the ALJ therefore erred in relying upon the VE's testimony to establish the existence of a significant number of jobs that Plaintiff could perform. Docket No. 10-1, p. 4-8. Specifically, Plaintiff claims that the ALJ failed to adequately consider testimonial evidence of Plaintiff's worsening right wrist and the possibility of using a brace in her physical therapy session. *Id.* Consequently, Plaintiff contends that her fingering limitations were mischaracterized as frequent instead of occasional. *Id.*[2] Plaintiff

---

[2] "Occasionally" means up to one-third of the time, while "frequently" means one-third to two-thirds of the time.

further asserts that the ALJ failed to assert these facts in his hypothetical to the VE. *Id.*

Defendant responds that the ALJ considered the record as a whole including Plaintiff's carpal tunnel syndrome diagnosis, her carpal tunnel release on the right hand in 2021, the revision release in 2021, physical therapy, the reported improvement in the medical record, and Plaintiff's statements on the worsening of her symptoms and her functional capabilities. Docket No. 14, p. 5. Defendant argues that the ALJ considered improved findings on physical exams based on her medical provider noting that while her right wrist was tender, she had increased range of motion and could fully flex her fingers and rotate her wrist without difficulty. *Id.* at 6. Further, in addition to objective medical evidence, Defendant contends that the ALJ considered Plaintiff's own testimony regarding her daily functioning and complaints of pain. *Id.* at 6-7. Thus, Defendant maintains that the ALJ's decision to limit Plaintiff to frequent fingering, handling, and reaching was properly supported by substantial evidence, and thus the hypothetical to the VE was accurate. *Id.* at 7-8.

Plaintiff replies that the ALJ failed to consider the objective and subjective evidence of Plaintiff's worsening wrist impairments, and thus the hypothetical to the VE lacked substantial evidence for finding Plaintiff can perform jobs that exist in significant numbers in the national economy. Docket No. 15. p. 1.

As previously stated, at step five, the Commissioner has the burden establishing the claimant's ability to work by proving there are a significant number of jobs in the national economy suited to the claimant's age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon*, 923 F.2d at 1181. The Commissioner's burden at step five can be met using grid rules only if nonexertional impairments, like manipulative

---

SSR 83-10, 1983 WL 31251, at *5-6.

limitations, do not significantly restrict the claimant. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). If such limitations exist, expert testimony is needed to demonstrate that jobs are available that the claimant can perform. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In support of the conclusion that the claimant may perform other jobs, the ALJ can rely on a vocational expert's (VE) testimony based on a hypothetical question, provided the question accurately portrays the claimant's credible impairments. *See Varley*, 820 F. 2d at 779. *See also Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). Although the ALJ should provide the VE with an accurate depiction of the claimant's abilities, an ALJ is not required to list a claimant's medical conditions within the hypothetical. *Ealy,* 594 F.3d at 516.

At Plaintiff's video hearing, the ALJ posed the following hypothetical question to the VE. The ALJ queried:

> Q: Consider an individual of the same age, education, and vocational background as that of the Claimant. In addition, consider an individual who will be provided a sit/stand-at-will option at work; who will not be required to walk at work; who will lift and carry 10 pounds occasionally and 10 pounds frequently; who will frequently reach, handle, and finger; who is able to understand, remember, and carry out simple instructions and tasks; who is able to use judgment to make simple, work-related decisions; who will have no contact with the public; who is capable of working in proximity to but not in coordination with co-workers; who will have occasional contact with supervisors; who will occasionally stoop and crouch; who will not crawl, kneel, climb ramps, stairs, ropes, ladders, or scaffolds; who will not work at heights or in proximity to hazardous conditions.
> …
> Are there any jobs in the national economy that this hypothetical individual could perform?
> A: Yes, Your Honor. I have a small parts assembler I; DOT code 706.684-022; light exertional level; SVP of 2; unskilled. There are 16,000 jobs in the national economy. A marker; DOT code 209.587-034; light exertional level; SVP of 2; unskilled. There are 137,000 jobs in the national economy. And a document preparer; DOT code 249.587-018; sedentary exertional level; SVP of 2; unskilled. There are 16,000 jobs in the national economy.

TR 68-69.

10

Plaintiff argues that the ALJ's hypothetical is not supported by substantial evidence, and that the amended hypothetical posed by the Plaintiff's Attorney should have been relied upon in the ALJ's decision. That hypothetical asked:

> Q: …If I amend the Judge's hypothetical question and then ask for you to assume that an individual's ability to handle and finger was reduced to occasional bilaterally, versus frequent bilaterally, what impact does that have on the three jobs that you've identified?
> A: That would eliminate those three occupations… I would say there really isn't a job market out there…for those restrictions.

TR 74.

After considering the entire record, the ALJ, determined that frequent fingering, rather than occasional, would be an appropriate limitation to accommodate Plaintiff's condition. His analysis examined the claimant's own subjective statements about her condition when making his decision. This included her difficulties with grasping a coffee cup, her ability to slowly zip a zipper or unbutton buttons, her capability to pick up a coin from a flat surface, and her role as the primary caregiver for her baby. TR 26. Further, the ALJ noted Plaintiff's testimony that she feels pain and numbness in her hands and joints. *Id.* at 24. The ALJ also acknowledged that Plaintiff mentioned during the hearing that she needs to wear hand braces, but she can still wiggle her fingers, with the exception of her thumb. *Id.* at 24, 57. Plaintiff's statements regarding her attendance at physical therapy, the reduction of her symptoms due to therapy, and her discharge on December 13, 2022, for not attending since March 2022 were taken into account. *Id.* at 24.

Further the ALJ considered objective medical evidence, including evidence from medical records that her carpal tunnel syndrome improved with surgery and injections. *Id.* at 26. The improvement of her carpal tunnel syndrome is evident in the medical record, where an examination of her right wrist shows she can fully extend and flex her fingers, as well as ulnar and radial deviate at the wrist without difficulty. *Id.* at 864.

After considering both the subjective and objective evidence in the record, the ALJ decided that limiting Plaintiff to frequent fingering, handling, and reaching would accommodate her limitations. *Id.* at 26. Plaintiff argues that the ALJ did not "fully" consider evidence indicating that her wrist symptoms were worsening. Docket No. 10-1, p. 8. In support of her position, Plaintiff compares this situation to *Robbins v. Social Security Administration*, in which the ALJ neglected both substantial subjective evidence of pain and objective evidence showing that treatment was ineffective in alleviating that pain. *See Robbins v. Comm'r of Soc. Sec.*, No. 1:23-cv-00183-SLC, 2024 U.S. Dist. LEXIS 132354, at *13-14 (N.D. Ind. July 24, 2024). However, in this case, the evidence shows that the ALJ thoroughly considered all the evidence provided by Plaintiff and the medical records. TR 26.

The ALJ appropriately used a hypothetical question based on credible limitations to support the VE's response, showing that there are many jobs in the national economy that Plaintiff can perform. *See Varley*, 820 F. 2d at 779. Therefore, there is substantial evidence to support the ALJ's decision, and Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and

Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

13